1
2
3
4
5
6
7
8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11
12
13
14
15
16
17

VINCENT DANIEL HOPPER, a/k/a Vincent
Daniel Hopper Marks, a/k/a Antolin Andrew
Marks, a/k/a Wayne Rudder

Plaintiff,

v.

NEIL CLARK, *et al.*,

Defendants.

Case No. C06-5282 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:
FEBRUARY 16, 2007**

18
19
20
21
22
23
24
25
26

This *Bivens* action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff, Vincent Daniel Hopper, an immigration detainee at the Northwest Detention Center (NWDC), has filed a Complaint against three employees of the Department of Homeland Security, Immigration and Customs Enforcement, Office of Detention and Removal, alleging violation of his First and Fifth Amendment rights. (Dkt. # 5). Defendants Clark, Garman and Melendez, whom Plaintiff has sued in their individual capacities, have moved pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint, arguing that they are entitled to qualified immunity as Plaintiff has failed to show that their actions would have violated a clearly established right. (Dkt. # 12). This report follows, recommending that

27
28

REPORT AND RECOMMENDATION - 1

1  Defendants' motion to dismiss be granted.[1]

2

3                          **I. STANDARD OF REVIEW**

4          The court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to

5  the complaint. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  All material factual

6  allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally

7  "construed in the light most favorable" to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421

8  (1969); Lee, 250 F.3d at 688.  A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6)

9  "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

10  which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

11         Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal

12  theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica

13  Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Vague and mere "[c]onclusionary allegations,

14  unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. Jones v.

15  Community Development Agency, 733 F.2d 646, 649 (9th Cir. 1984); Pena v. Gardner, 976 F.2d

16  469, 471 (9th Cir. 1992).  Even though the court is to construe the complaint liberally, such

17  construction "may not supply essential elements of the claim that were not initially pled." Pena, 976

18  F.2d at 471.

19         Before the court "may dismiss a *pro se* complaint for failure to state a claim, it "must provide

20  the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend

21  the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992); see also

22  Noll v. Carlson, 809 F.2d 1446, 1449 (9th Cir. 1987).  However, leave to amend need not be granted

23  where amendment would be futile or the amended complaint would be subject to dismissal.  Saul v.

24  _____

25         [1]Defendants' motion to dismiss was originally noted for consideration on September 29,

26  2006.  Plaintiff did not respond to that motion, a fact noted in Defendants' reply.  Plaintiff responded
   that he never received a copy of the original motion, so the Court re-noted the motion to allow

27  Plaintiff additional time to properly respond.  (Dkt. # 22).

28  REPORT AND RECOMMENDATION - 2

1  United States, 928 F.2d 829, 843 (9th Cir. 1991).

2      A complaint alleging constitutional violations by federal officers in their individual

3  capacity may be maintained under Bivens v. Six Unknown Named Agents of the Fed. Bureau of

4  Narcotics, 403 U.S. 388 (1971).  However, before entertaining a suit on the merits, the court must

5  determine whether the facts alleged, taken in the light most favorable to the party asserting the

6  injury, show the officers' conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201

7  (2001).  A qualified immunity defense must be considered in proper sequence.  A ruling should be

8  made early in the proceedings so that the cost and expenses of trial are avoided where the defense is

9  dispositive.  Id. at 194.  The initial inquiry is whether a constitutional right would have been violated

10  on the facts alleged, for if no right would have been violated, there is no need for further inquiry into

11  immunity.  Id.  If a violation could be made out on a favorable review of the parties' submissions, the

12  next, sequential step is whether the right was clearly established.  Id.  This inquiry must be

13  undertaken in light of the case's specific context, not as a broad general proposition.  The relevant,

14  dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful

15  in the situation he confronted.  Id. at 194-195 (citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct.

16  1692, 143 L.Ed.2d 818).

17      "Actions under § 1983 and those under Bivens are identical save for the replacement of a

18  state actor under § 1983 by a federal actor under Bivens."  Van Strum v. Lawn, 940 F.2d 406, 409

19  (9th Cir. 1991).  "Immunities are analyzed the same under § 1983 and Bivens."  F.E. Trotter, Inc. v.

20  Watkins, 869 F.2d 1312, 1318 (9th Cir. 1989).

21

22                      **II.  DISCUSSION**

23  **A.     Plaintiff Fails to State a Claim that Officers Clark, Garman, and Melendez Violated a
        Constitutional Right in Confiscating Documents From Plaintiff's Mail.**

24

25              **1.     Plaintiff's Takings Claim**

26      Plaintiff claims that Officers Clark, Garman, and Melendez violated the Takings

27  Clause of the Fifth Amendment by improperly confiscating two copies of a birth certificate from his

28  REPORT AND RECOMMENDATION - 3

1   incoming mail at the NWDC. The Takings Clause of the Fifth Amendment provides that private

2   property taken for public use without just compensation is a violation of the Constitution. *See*

3   Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131 (1998).

4          A takings claim may only be based on the government's rightful exercise of its property,

5   contract, or regulatory powers. Golder v. United States, 15 Cl.Ct. 513, 518 (1988). A takings claim

6   does not arise when rights or property have been impaired through unlawful government action.

7   Florida Rock Industries, Inc., v. United States, 791 F.2d 893, 898-899 (Fed.Cir.1986).

8          Plaintiff alleges that he paid $36.00 for two birth certificates and that the certificates were

9   wrongfully confiscated by Officers Clark, Garman, and Melendez, and used for government purposes

10   without his consent.  (Dkt. # , p. 4).  However, a Fifth Amendment takings claim requires that

11   property be taken through rightful exercise of the government's eminent domain power, or its

12   property, contract or regulatory power. *See* Golder, 15 Cl.Ct. at 518.  Defendants argue that Plaintiff

13   has failed to allege rightful exercise of government action.  Instead, he alleges that Officers Clark,

14   Garman and Melendez wrongfully confiscated his birth certificates by conspiring and retaliating

15   against him by withholding the certificates when they knew he needed them for other purposes. (*See*

16   Dkt. # 5, p. 6-9).

17          Exhibit 1 to Plaintiff's Complaint illustrates however, that Plaintiff was aware that the

18   original birth certificates were considered contraband and retention of them was contrary to

19   detention policies.  (Dkt. # 5, Exh. 1).  Plaintiff was given notice that he would only be allowed to

20   retain copies of them while he was in custody.  (Id., Exh. 1).  Thus, a more liberal reading of

21   Plaintiff's Complaint is that he has alleged a rightful taking by Officers Clark, Garman and Melendez,

22   but has failed to allege a government purpose.  There is no allegation or evidence that the birth

23   certificates have been put to any public use without just compensation to Plaintiff.  Plaintiff claims

24   only that Officers Clark, Garman and Melendez withheld the certificates from him when they knew

25   he needed them for other purposes.  (*See* Dkt. # 5, p. 6-9).  Plaintiff also alleges that Officer

26   Garman used his certificates "for governmental purposes" when Officer Garman attached them to the

27   declaration he made before the Immigration Court.  (Dkt. # 23, p. 16).

28   REPORT AND RECOMMENDATION - 4

1    The plain language of the takings clause guarantees property owners a monetary remedy

2    when the government wishes to use their property.   This is clearly not the situation at hand.

3    Plaintiff's Complaint clearly reflects that Plaintiff received notice that detention center policies

4    prohibited retention of the original birth certificates as contraband, but that the originals would

5    remain in his file for his use as evidence at his immigration hearing.  (Dkt. # 5, Exh. L, p. 7).

6    Accordingly, Plaintiff's claim, based on the Takings Clause of the Fifth Amendment is

7    misplaced and he has failed to state a claim that Officers Clark, Garman, and Melendez violated a

8    clearly established constitutional right.

9    **2.    Plaintiff's Due Process Claim**

10    Plaintiff also claims that Defendants' confiscation of his birth certificates pursuant to INS

11    regulation violated his procedural due process rights under the Fifth Amendment.  The regulation

12    defines identification documents, such as the original birth certificates at issue here, as contraband:

B. <u>Detainee Notification</u>

The facility shall notify detainees of its policy on correspondence and other mail
through the detainee handbook or equivalent provided to each detainee upon
admittance.

At a minimum, the notification shall specify:

.   .   .

7.    . . . The notification will state that identity documents, such as passports, birth
certificates, etc., are contraband and may be used by the INS as evidence or as
otherwise appropriate.  The notification will state that if detainees are not
allowed to keep an identity document in their possession, they will be
provided with a copy of the document, certified by an INS officer to be a true
and correct copy; . . .

.   .   .

(Dkt. # 5, Exh. 1).

Plaintiff alleges that his request for the original birth certificates was denied and that he was

referred to Officer Clark for further questions on the matter.  (Dkt. # 5 at 8).  Thus, Defendants

argue that according to Plaintiff's Complaint, not only was Plaintiff given notice and an opportunity

to be heard, Plaintiff was also given an opportunity to appeal.  Plaintiff argues that there was no

REPORT AND RECOMMENDATION - 5

opportunity to be heard, however, because it was Officer Clark who directed that the certificates not be released and Plaintiff was advised that the issue was non-negotiable and non-grievable.  (Dkt. # 23, p. 5).

Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth Amendment.  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  In analyzing whether Plaintiff was deprived of procedural due process, the Court must first determine whether Plaintiff was deprived of a constitutionally protected liberty or property interest protected by the Constitution; if so, the court should then determine "whether the procedures attendant upon that deprivation were constitutionally sufficient."  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  "Prisoners may not be deprived of life, liberty or property without due process of law; however, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations ommitted).

When testing the reasonableness of prison officials' actions against a constitutional challenge, courts are required to give "wide-ranging deference" to the adoption and execution of institutional policies.  Bell v. Wolfish, 441 U.S. 520, 547 (1979).  Thus, prison regulations or, as in this case, INS Detention standards, alleged to infringe on constitutional rights are judged by a lenient "reasonableness" standard.  O'Lone v. State of Shabazz, 482 U.S. 342, 348 (1987).  Under this standard, a prison regulation will be found valid if it "is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  In determining whether restrictions or conditions are reasonably related to the institution's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed the warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert

REPORT AND RECOMMENDATION - 6

1   judgment in such matters." <u>Bell</u>, 441 U.S. at 546-47 & n. 28.[2]

2       Broad discretion is afforded to prison officials in regulating incoming mail in the interests of

3   maintaining order and security.  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989).   Plaintiff does not

4   attack the validity of the regulation at issue, which clearly defines birth certificates as contraband.

5   The three individually named defendants followed the valid INS Detention Policy regarding birth

6   certificates being clearly defined as contraband.  In addition, Plaintiff was to be provided copies of

7   his birth certificates and the originals were retained in his file for use at his immigration hearing.

8   (Dkt. # 5, Exh. A, p. 5; Exh. L, p. 7).  Thus, the Court finds that retention of the birth certificates as

9   contraband was reasonably related to the institution's interest in maintaining security and order.

10       Viewing Plaintiff's allegations and exhibits in the light most favorable to Plaintiff, the

11   undersigned concludes that Plaintiff cannot claim a violation based upon the Due Process Clause of

12   the Fifth Amendment as Plaintiff does not have a property interest in retaining the original birth

13   certificates during his detention.  Accordingly, the Court recommends that the Defendants' motion to

14   dismiss Plaintiff's Fifth Amendment claims be granted.

15

16   **B.      Plaintiff Fails to State a Claim that Officers Clark, Garman, and Melendez Violated a
17            Constitutional Right Regarding Plaintiff's Transfer**

18       Plaintiff also claims that Officers Clark, Garman, and Melendez violated his First

19   Amendment rights by conspiring to retaliate against him.  He claims that because he filed several

20

21       [2]Although <u>Bell</u> speaks of the rights of criminal pre-trial detainees, it is also applied to the
    rights of BCIS detainees. <i>See, e.g.,</i> <u>Kyei v. Beebe</u>, 121 Fed.Appx. 689 (9th Cir. 2005)(<i>citing</i> <u>Bell</u>,
22   441 U.S. 539-40 & n. 23) (classification of BCIS detainees as medium security reasonably related to
    legitimate government purposes of maintaining security and managing an institution); <u>Clement v.</u>
23   <u>Crawford</u>, 991 F.2d 803 (9th Cir. 1993) (unpublished opinion) (strip search reasonably related to INS
    detention center's need to search for contraband) (<i>citing</i> <u>Bell</u>, 441 U.S. 539-40 & n. 23).

24

25       <i>See also</i>, <u>Preval v. Reno</u>, 57 F.Supp.2d 307, 311 & n. 5 (E.D. Va. 1999), <i>rev'd on other</i>
    <i>grounds</i>, 203 F.3d 821 (4th Cir. 2000) (noting that while few courts have addressed the proper
26   constitutional standard for assessing alien detainees' [§ 1983] claims based on conditions of
    confinement, those that have find them more akin to those of pre-trial detainees and apply the
27   analysis of <u>Bell</u>, 441 U.S. 539) (citing cases from the Fifth, Tenth and First Circuits).

28   REPORT AND RECOMMENDATION - 7

lawsuits involving these Officers, they retaliated against him by effectuating his transfer based on a parole violation warrant issued by the State of California.

To demonstrate retaliation in violation of the First Amendment, Plaintiff must ultimately prove first that the Officers took action that "would chill or silence a person of ordinary firmness from future First Amendment activities." Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999).

The warrant in question was issued in September of 2005 and was not acted upon until March 2006 when, Plaintiff states, all four of his lawsuits had been served against the Defendants. Plaintiff also alleges that the warrant was issued in error and Defendants knew this, but acted on it anyway in retaliation against him.  However, Plaintiff admits that the Defendants acted because of a warrant issued by the State of California for a parole violation.  (Dkt. # 6 at 9-10).  Plaintiff also acknowledges that the State of California, not the named Defendants, issued the warrant in error. (Id.).  However, he alleges that Officers Clark, Garman, and Melendez should have known that the warrant was "issued in error by California," and they disregarded this fact and attempted to transfer Plaintiff anyway based on retaliatory motives.  (Id)  Plaintiff argues that this is enough to state a claim and survive the motion to dismiss.  Defendants argue that this speculation is too attenuated to state a claim upon which relief can be granted.  The Court agrees that the allegations are too speculative and notes also that the Officers had no authority to determine the validity of the warrant in question.

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  Pena, 976 F.2d at 471.  The warrant was issued by an authority separate from the Officers and there is no evidence that the Officers acted unreasonably or unlawfully in executing the warrant as issued.  Viewing the facts alleged in the light most favorable to Plaintiff, the Court finds that Plaintiff has not asserted a violation of the First Amendment.  The Court recommends that Plaintiff's First Amendment claims against Officers Clark, Garman and Melendez be dismissed with prejudice.

REPORT AND RECOMMENDATION - 8

### III. CONCLUSION

Viewing all Plaintiff's material factual allegations as admitted and construing his Complaint and attachments liberally in the light most favorable to him, it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims that Officers Clark, Garman, or Melendez violated his Fifth Amendment rights by allegedly improperly confiscating copies of a birth certificate Plaintiff received in the mail at the NWDC or violated his First Amendment rights by processing his transfer pursuant to a probation violation warrant issued by the State of California.

For these reasons, the Court recommends that the Defendants' Motion to Dismiss (Dkt. # 12) be **GRANTED**.  A proposed Order accompanies this Report and Recommendation.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 16, 2007**, as noted in the caption.

DATED this 23rd  day of January 2007.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9