1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VINCENT DANIEL HOPPER a/k/a
VINCENT DANIEL HOPPER MARKS a/k/a
ANTOLIN ANDREW MARKS a/k/a WAYNE
RUDDER,

        Plaintiff,

        v.

NEIL CLARK, *et al.*,

        Defendants.

Case No. C06-5282 RBL/KLS

REPORT AND RECOMMENDATION

**Noted For: July 20, 2007**

16

17

18

19

20

21

22

       This 42 U.S.C. § 1983 civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Before the Court is a Motion to Dismiss Pursuant to Rule 26(b)(6) or Rule 56 brought by the remaining defendants.  (Dkt. # 30).  After careful review of Defendants' motion, Plaintiff's response (Dkt. # 45), Defendants' reply (Dkt. # 47), and the parties' summary judgment evidence, the Court finds that Defendants' motion should be granted and Plaintiff's claims be dismissed with prejudice.[1]

23

24

25

       [1]Defendants' motion pursuant to Rule 26(b)(6) or Rule 56 is treated by the Court as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Sufficient time has been allowed for Plaintiff to respond and Plaintiff's response and summary judgment evidence shall be considered by the Court.

26

REPORT AND RECOMMENDATION - 1

1   Plaintiff is an immigration detainee at the Northwest Detention Center ("NWDC").

2   Defendants are employees of the NWDC, which, under contract with the Federal Bureau of

3   Immigration and Customs Enforcement ("BICE"), is owned and operated by The Geo Group Inc.

4   ("GEO").  On July 5, 2006, Plaintiff filed this lawsuit asserting claims against three BICE

5   Defendants and against the six GEO Defendants, all of whom are or were detention officers at

6   NWDC.[2]  Plaintiff alleges that Defendants Singleton and Riley violated his due process rights by

7   changing his custody level from blue to orange and moving the location where he was housed.

8   Plaintiff claims this was done in retaliation because he assisted other detainees with their court

9   actions and for pursuing his own court actions. (Dkt. # 5 at 5-6, 19-20).  Plaintiff also alleges that

10  Defendants De Guia, Hawkins, Thomas, and Hansen failed to pay him for work he performed and

11  that this was a violation of his Fifth Amendment due process rights and constituted involuntary

12  enslavement contrary to the Thirteenth Amendment. (*Id.* at 5, 22-23).

13

14  **II.  DISCUSSION**

15  **A.    Standard of Review**

16  The court may grant summary judgment "if the pleadings, depositions, answers to

17  interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

18  issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

19  P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

20  make a sufficient showing on an essential element of a claim on which the nonmoving party has the

21  burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

22  _____

23  [2]Plaintiff alleged that the BICE Defendants improperly confiscated a birth certificate Plaintiff
    received in the mail at the NWDC and wrongfully processed Plaintiff's transfer pursuant to a
24  probation violation warrant issued by the State of California. Plaintiff's claims against the BICE
    Defendants were dismissed on January 23, 2007.
25

26  REPORT AND RECOMMENDATION - 2

1    There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

2    rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

3    *Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence,

4    not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

5    over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

6    a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

7    242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626,

8    630 (9th Cir. 1987).

9    The determination of the existence of a material fact is often a close question.  The court must

10   consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

11   preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*,

12   809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

13   party only when the facts specifically attested by the party contradicts facts specifically attested by the

14   moving party. *Id.*

15

16   **B.    Plaintiff's Claims Under 28 U.S.C. § 1915.**

17   28 U.S.C. § 1915(e)(2) provides that, "[n]otwithstanding any filing fee, or any portion

18   thereof, that may have been paid, the court shall dismiss the case at any time if the court determines

19   that . . . the allegation of poverty is untrue . . . ".   Defendants contend that Plaintiff's claims should

20   be dismissed because Plaintiff violated 28 U.S.C. § 1915 by failing to fully and properly state his

21   financial status when applying to proceed without prepayment of filing fees.

22   On May 22, 2006, Plaintiff filed a "Declaration in Support of Request to Proceed without

23   Prepayment of Filing Fees."  (Dkt. #31 at 2, Exh. A; *See also* Dkt. # 1).  In so doing, he declared

24   subject to penalty of perjury that the information he provided was true and correct.  (*Id.*).  Plaintiff

25   was required to provide certain information regarding his financial status.   Plaintiff represented that

26   REPORT AND RECOMMENDATION - 3

1   in the prior 12 months he had received "about 70.00 from friends; 197 for payment on lost

2   typewriter; about 50 dollars from work." *Id.*  Defendants maintain that Plaintiff failed to disclose,

3   however, that he had certain monies being held for him at NWDC, including a Bank of America

4   Cashier's Check dated June 17, 2005 in the amount of $500.00; a Bank of America check dated

5   December 15, 2005 in the amount of $100.00; and a Bank of America check dated April 11, 2006 in

6   the amount of $35.20.  (Dkt. # 32 at ¶ 2, Exh. A).

7          There is no evidence before the Court that the funds referred to by Defendants were actually

8   available for Plaintiff's use.  There is some question that the $500.00 check and $100.00 check state

9   on their face that they may have been void prior to the date that the Plaintiff filed this lawsuit.  (See

10  *Id.* at Exh. A)  In addition, Plaintiff maintains that Defendants refused to make the checks available

11  to him, although he requested that they be cashed and that they be sent in payment for magazines.

12  (Dkt. # 39 at 2-3).

13         Viewing all the evidence in the light most favorable to the non-moving party, the undersigned

14  does not find the allegation of poverty to be untrue and, therefore, there is no basis to dismiss the

15  Plaintiff's claims.  Accordingly, the undersigned recommends that Defendants' motion that Plaintiff's

16  case be dismissed on this ground be denied.

17

18  **C.     Plaintiff's Classification Claim**

19         Plaintiff contends that his constitutional rights were violated when he was reclassified from a

20  Level 1 to a Level 2 in March and April of 2006.  Specifically, Plaintiff claims that he was retaliated

21  against when he filed lawsuits and when he helped others file lawsuits.  (Dkt. # 5 at 19-20).

22         Prisoners do not have a constitutional right to a particular classification status.  *Hernandez v.*

23  *Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987).  Prison officials may subject a pretrial detainee "to the

24  restrictions and conditions of the detention facility so long as those conditions and restrictions do not

25  amount to punishment, or otherwise violate the Constitution."  *Bell v. Wolfish*, 441 U.S.520, 536-37

26  REPORT AND RECOMMENDATION - 4

1   (1979)[3].  When determining whether the conditions imposed on a pretrial detainee constitute

2   punishment,

> [a] court must decide whether the disability is imposed for the purpose of punishment
> or whether it is but an incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on the part of detention facility
> officials, that determination generally will turn on "whether an alternative purpose to
> which [the restriction] may rationally be connected is assignable for it, and whether it
> appears excessive in relation to the alternative purpose assigned [to it]."

*Id.* at 539 (citations omitted) (footnote omitted).  "Prison administrators . . . should be accorded

wide-ranging deference in the adoption and execution of policies and practices that in their judgment

are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* at 547

(citations omitted).

    Plaintiff acknowledges he has no liberty interest in his classification status.  (Dkt. # 45 at 15.)

Plaintiff also does not attack the validity of the regulations at issue.  He does, however, alleges he

was reclassified in retaliation for his litigation activities.  (Dkt. # 5 at 20-21).   The undisputed facts

relating to Plaintiff's classification and reclassification at NWDC are as follows:

    The classification policy is set forth in the NWDC Detainee Handbook.  (Dkt. # 33 at ¶ 2,

Exh. A).  Pursuant to that policy, all detainees are classified upon arrival at NWDC based on criminal

history and other information provided by BICE.  The classification is then periodically reassessed.

(*Id.*).  There are three classification levels: blue (Level l -- lowest), orange (Level 2 -- middle), and

red (Level 3 --highest). The reassessment can raise, lower or leave unchanged a detainee's score

depending on such issues as the detainee's disciplinary record at NWDC, behavior while in custody,

and additional information received from BICE.  (*Id.*).   Detainees may appeal their classifications.

---

[3]Although *Bell* speaks of the rights of criminal pre-trial detainees, it is also applied to the
rights of BCIS detainees. *See, e.g., Kyei v. Beebe,* 121 Fed.Appx. 689 (9th Cir. 2005)(*citing Bell,*
441 U.S. 539-40 & n. 23) (classification of BCIS detainees as medium security reasonably related to
legitimate government purposes of maintaining security and managing an institution); *Clement v.
Crawford*, 991 F.2d 803 (9th Cir. 1993) (unpublished opinion) (strip search reasonably related to INS
detention center's need to search for contraband) (*citing Bell*, 441 U.S. 539-40 & n. 23).

REPORT AND RECOMMENDATION - 5

1   (*Id.*).

2   In August 2005, Plaintiff arrived at NWDC after being transferred from a California

3   criminal facility. Based on the I-213 form provided by BICE, Plaintiff received a "3" as his

4   Comprehensive Custody Score.  (*Id.* at ¶ 3, Exh. B).  As a result, he was classified as Level 1

5   and would wear a blue uniform. (*Id.*, Exh. C).   In March 2006, NWDC learned from BICE that

6   Plaintiff has a much more extensive criminal background (29 misdemeanors and 15 felonies,

7   including grand theft) than had initially been reported. This information was provided to NWDC via

8   a Criminal and Immigration History Information Sheet. (*Id.* at ¶ 4, Exh. D).  On March 14, 2006,

9   Plaintiff's classification was reassessed, based on this new information.  His Comprehensive Custody

10  Score was a "5," meaning he was a Level 2, and would wear an orange uniform. (*Id.*, Exh. E).

11  Plaintiff was then moved from Pod A-3 (dorm) to Pod A-I (cells), because Pod A-3 is for Level 1

12  detainees only whereas Level 2 detainees can be housed in Pod A-I. (*Id.* at 5).

13  In response to his reclassification, Plaintiff filed a Detainee Request Form demanding to

14  know why his classification had changed.  (*Id.* at 6).  It was explained to Plaintiff that his

15  classification was upgraded based on updated information on his criminal history.  Although Plaintiff

16  could have filed an appeal, he did not.  He filed two grievance forms, even though NWDC and BICE

17  policy cannot be the subject of a grievance. (*Id.* at ¶ 6, Exh. F).

18  On March 23, 2006, Plaintiff was released from NWDC by BICE and placed in Pierce

19  County Jail.  (*Id.* at ¶ 7).  On April 11, 2006, Plaintiff was returned to NWDC. Based on the

20  Criminal and Immigration History Information Sheet, Plaintiff was again classified as a Level 2 and

21  placed in Pod A-I. Plaintiff did not submit a grievance or an appeal regarding this classification

22  action. (*Id.*).

23  The undisputed evidence reflects that Plaintiff was reclassified and his housing changed

24  consistent with BICE and NWDC policy and that Plaintiff's reclassification was directly related to

25  Plaintiff's criminal history and the institution's interest in maintaining security and order.  Viewing

26  REPORT AND RECOMMENDATION - 6

the evidence in the light most favorable to Plaintiff, the undersigned concludes that there was no retaliation by Defendants in response to Plaintiffs' exercising his right to access the courts. There are no facts before the Court to show that Plaintiff's reclassification was done for any purpose that could be considered retaliatory. There are no facts to support any inference that reclassification was done, as is claimed by Plaintiff, for his litigation activities. Accordingly, the undersigned recommends that Defendants' motion be granted on this issue.

**D.     Plaintiff's Claim of Slavery Fails as a Matter of Law**

Plaintiff claims that Defendants failed to pay him wages in violation of his due process rights and his rights under the Thirteenth Amendment. Slavery is defined as involuntary servitude, and "(t)he term 'involuntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

It is undisputed that Plaintiff participated in the Voluntary Work Program available to detainees at the NWDC. (Dkt. # 33 at ¶ 8). Wages are $1 per day. (*Id*.). On certain days he was authorized to work and did work in the pod where he was housed, and he was paid $1 for each such day, with the $1 being credited to his detainee financial account. When he was authorized to work and did work, Plaintiff would perform such tasks as handing out laundry and rearranging books. (Dkt.# 33 at ¶ 9). Pursuant to the policy, a detainee must submit a claim for non-payment within 14 days of the date in question. (*Id*., Exh. G). Plaintiff alleges there are 12 days for which he should have been but was not paid: December 30, 2005, January 7, 2006, January 8, 2006, January 13, 2006, January 14, 2006, January 15, 2006, February 12, 2006, February 19, 2006, March 5, 2006, March 8, 2006, March 11, 2006, and March 12, 2006. (Dkt. # 5 at 22-23).

1    Plaintiff's detainee financial account reflects that he was paid for February 12th.  (Dkt. # 33 at

2    ¶ 10, Exh. H.).  With regard to Plaintiff's claim for December 30, 2005, February 19, 2006, and

3    March 5, 2006, Plaintiff did not submit a claim for non-payment within 14 days as the policy

4    requires.  (*See* Dkt. # 33 at ¶ 11, Exh. G).  Therefore, Defendants argue that Plaintiff is not entitled

5    to payment for those three days.

6    With regard to the remaining eight days, Plaintiff was advised that he must obtain an officer's

7    verification in order to receive payment. The officers did not agree with Plaintiff s claim that he was

8    authorized to and did work those days and did not provide verification for Plaintiff to receive

9    payment for those days.  (*Id*. at ¶ 12, Exh. I).    After Plaintiff filed grievances, officers provided

10   verifications for three days – January 28, 2006, January 30, 2006, and February 4, 2006, so that

11   Plaintiff would receive payment for those three days. (*Id*., Exh. I).

12   Plaintiff claims that Defendants' policy requiring detainees to submit a claim for non-payment

13   within 14 days is essentially meaningless as Defendants routinely fail to provide detainees with an

14   accounting of the monies earned.  In support Plaintiff provides the affidavits of Tajudeen Manliki,

15   Ahmed Muyingo and Damion Bromfield.  (Dkt. # 45, Exhs. C, F and G).  Mr. Manliki states that

16   Defendants never provide accountings of the amounts that he is paid and on the occasions when he

17   has requested an accounting, it is always more than fourteen days before they provide one to him.

18   (*Id*. at Exh. C).  Mr. Muyingo states that "it took me a long time to gain a copy of the document that

19   would tell me whether I had been paid or not. This long time was over fourteen days."  (*Id*. at Exh.

20   C).  Mr. Bromfield stated that Defendants owed him about $15.00 dollars for his work and that after

21   filing many grievances, Defendants "ultimately paid [him] only about seven dollars."  (*Id*. at Exh. E).

22   Plaintiff submits that this evidence is enough to establish a policy and practice of failing to

23   pay persons for their work and that Defendants' payment policy is unconstitutional.

24

25   The first element of Plaintiff's claim is that Defendants' failure to pay his wages constitutes

26   REPORT AND RECOMMENDATION - 8

1   slavery.  In other words, Defendants have deprived him of liberty without due process of law by

2   forcing him to work without pay.  However, the Thirteenth Amendment does not prohibit

3   involuntary servitude as part of Plaintiff's detention.     *See e.g.,Ford v. Nassau County Executive*. 41

4   F. Supp.2d 392 (E.D.N.Y. 1999); (requiring pretrial detainee to work as a food cart worker without

5   pay did not constitute slavery); *Biieol v. Nelson*, 579 F.2d 423 (7th Cir. 1978) (requiring pretrial

6   detainees to perform general housekeeping duties without pay was not unlawful). The undisputed

7   evidence reflects that Plaintiff was not compelled to work but participated in a voluntary work

8   program.  Even assuming that Defendants still owe $8.00 to Plaintiff for days that he worked,

9   Defendants' failure to pay Plaintiff does not constitute a violation of his Thirteenth Amendment

10   rights and does not mean that he has been enslaved.

11        The second element of Plaintiff's claim is essentially that Defendants' failure to pay his wages

12   constitutes a deprivation of a property interest.  In other words, by offering payment for the work

13   performed and instituting a claims process that they do not consistently follow, Defendants are

14   required to provide Plaintiff with a meaningful opportunity to be heard with regard to the wages that

15   he has earned.  *See*, *Parratt v. Taylor*, 451 U.S. 527 (1981).  According to Defendants' voluntary

16   work program policy, wages earned by detainees are to be calculated and credited to detainee

17   accounts on a daily basis.  (Dkt. # 45, Exh. E Detention Center Handbook).  Detainees must submit

18   claims for non-payments within 14 days of the date in question and detainees may also request copies

19   of their personal accounts once each week.  (*Id*.).

20        While Plaintiff's summary judgment evidence indicates that there may be some question as to

21   whether Defendants administer detainee trust accounts in a consistent and timely fashion, the

22   undisputed evidence relating to Plaintiff indicates that Plaintiff was given an opportunity to be heard

23   at a meaningful time and in a meaningful manner through the grievance process and resolution of a

24   portion of  his wage claim.

25        Accordingly, the undersigned recommends that Defendants' motion for summary judgment

26   REPORT AND RECOMMENDATION - 9

1    on this claim be granted.

2

3                               **III. CONCLUSION**

4            For the reasons stated above the Court should **GRANT** Defendants' motion for summary

5    judgment and dismiss Plaintiff's claims.  A proposed order accompanies this Report and

6    Recommendation.

7            Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

8    the parties shall have ten (10) days from service of this Report to file written objections.  *See also*

9    Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

10   appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

11   72(b), the clerk is directed to set the matter for consideration on **July 20, 2007**, as noted in the

12   caption.

13
             DATED this 19th day of June, 2007.
14

15

16

17                                              Karen L. Strombom
                                                United States Magistrate Judge
18

19

20

21

22

23

24

25

26   REPORT AND RECOMMENDATION - 10